

**Lawrence S. Lustberg**
Partner
+1 973.596.4731 (t)
+1 973.639.6332 (f)
llustberg@fbtgibbons.com

May 5, 2026

**VIA EMAIL**

Honorable Michael E. Farbiarz
United States District Judge for the District of New Jersey
Frank Lautenberg Post Office & U.S. Courthouse
2 Federal Square
Newark, New Jersey 07102

> Re:    *United States v. Haghighat, et al.*, **Crim No. 25-339-MEF (D.N.J.)**

Dear Judge Farbiarz:

I write in response to the Court's request for clarification of the circumstances under which my client, Fabio Sabzevari, was indemnified for a portion of the attorneys' fees in this matter.   The facts are these:

1. This Firm was initially retained in this matter on or around April 7, 2025, with the understanding that Mr. Sabzevari – who clearly could not afford counsel – would be indemnified by his employer at the time of the events in question in this case (*i.e.*, in May and June, 2023), Triton Systems, Inc. ("Triton"); as the Court will recall, Mr. Sabzevari served as, among other things, the personal assistant to Rouzbeh Ross Haghighat,[1] the Chairman and Chief Executive Officer of Triton.  That indemnification agreement was negotiated with both in-house and outside counsel for Triton, and was embodied in an appropriate retainer agreement between Gibbons P.C. and Mr. Sabzevari dated April 20, 2025, which specifically cited to and described New Jersey Rule of Professional Conduct (RPC) 1.8(f).[2]

2. That provision allows for the payment of legal fees by third parties, under specific circumstances, including that (1) Mr. Sabzevari was required to give

---

[1] Unlike the way in which he was referenced throughout this case as "Ross" or "Ross Haghighat," this letter refers to him as "Mr. Haghighat" because his brother Behrouz ("Bruce") Haghighat is not implicated in the issues discussed herein.

[2] The New Jersey RPCs are applicable to the conduct of attorneys in this Court, pursuant to L. Civ. R. 103.1(a) and L. Crim R. 1.1.

May 5, 2026
Page 2

his informed consent to this arrangement; (2) there would be no interference with the independence of our professional judgment or with our attorney-client relationship; and (3) we protect all confidential information relating to our representation of Mr. Sabzevari. See RPC 1.8(f); *In re State Grand Jury Investigation*, 200 N.J. 481 (2009)[3]; *State v. Kearney*, 479 N.J. Super. 539, 559 (App. Div. 2024) (explaining Rule 1.8(f)).

3. That agreement was only entered into following full consultation with Mr. Sabzevari, including a complete discussion of any and all risks and benefits of the arrangement.

4. On or about April 25, counsel for Triton communicated to the undersigned that the Triton Board of Directors had determined not to indemnify any of its employees, including Ross Haghighat, with regard to the actions at issue in this matter and would accordingly limit its indemnification to fees for services incurred on or before April 18, 2025. Mr. Sabzevari understood that Ross Haghighat was pursuing an appropriate legal challenge to this decision of the Triton Board[4] but that, in the meantime, he would pay Mr. Sabzevari's legal fees directly, given his (Ross's) position at Triton. A revised engagement letter between Gibbons P.C. and Mr. Sabzevari setting forth this arrangement was accordingly entered into on May 9, 2025, following discussion with counsel for Mr. Haghighat (Mr. Fee) and, once again, complete and thorough consultation with Mr. Sabzevari.

5. Thereafter, and continuing through November, 2026, Mr. Haghighat, pursuant to discussions with the undersigned counsel with which his counsel was involved, in fact paid some of the fees charged to Mr. Sabzevari; those payments ended before trial commenced. Mr. Haghighat made no payments after November 26, 2026, other than a small payment of $5,000 at or about the time of trial to assist Mr. Sabzevari, who was penniless at the time, with expenses for his travel to New Jersey for trial. Without disclosing—as we believe is inappropriate—the total amount of fees charged, I will disclose that

---

[3] The New Jersey Supreme Court's decision in the *In re State Grand Jury Investigation* matter, albeit in a different context – in which both a corporation and its employees are targets of the same investigation – sets forth certain conditions pursuant to which a corporation may pay the counsel fees for the employees. 209 N.J. at 486-87, 495-98. Each of those conditions were satisfied here.

[4] Mr. Sabzevari is unaware of the results of that challenge or its status. No fees have been paid on his behalf of Triton.

One Gateway Center | Newark, NJ 07102 | 973-596-4500
**FBT Gibbons LLP | fbtgibbons.com**

May 5, 2026
Page 3

Mr. Haghighat paid only approximately one-third (1/3) of the total fees charged to Mr. Sabzevari in this matter.

6. Throughout the course of this matter – from pre- and post-indictment discussions with the Government, to post-indictment motion practice and then trial – the undersigned counsel had frequent discussions with Mr. Sabzevari about his strategy with regard to this case, ██████████████████ ██████████████████████████████████████ ██████████████████████████████████████ ███████████████████████████. Those discussions are privileged and should certainly not be inquired into by the Court, but resulted in decisions, made by Mr. Sabzevari after full consultation with counsel (including his review of all pertinent documents and pleadings), as to his pretrial, trial, and post-trial positions, that were in no way affected by the fact that Mr. Haghighat had paid his prior fees or that he had refused to pay any further ones.

7. I am confident that we provided the effective, conflict-free assistance of counsel to which Mr. Sabzevari was constitutionally entitled by the Sixth Amendment to the Constitution of the United States, irrespective of Mr. Haghighat's payment of some of Mr. Sabzevari's fees and that, as RPC 1.8(f) requires, we never once wavered in the independence of our professional judgment or compromised in any way the confidentiality of information that we obtained from him or otherwise in the course of our representation of him. Specifically, those decisions, regarding a whole host of issues and options, were ███████ ██████████████████████████████████████ ███████ made with only one thing in mind: what Mr. Sabzevari believed, after consultation with counsel, was both true and in his best interest.

8. Mr. Sabzevari has repeatedly confirmed that he agrees that this is so and, in fact, wishes for us to continue our representation of him on appeal given our relationship with him and knowledge of the facts of this case; indeed, he so indicated at the conclusion of his sentencing yesterday. However, he cannot afford to pay for counsel at this point, as the Presentence Investigation Report clearly demonstrates, and, while this has been true for some time, this is the first juncture of the case in which it seemed procedurally appropriate to request the appointment of counsel.

We do not believe that any of the above facts, which we have repeatedly reviewed with Mr. Sabzevari, will be in any way contested or that a hearing should be held at which he is required to answer the Court's inquiries, primarily because, as

May 5, 2026
Page 4

the above indicates, it would be difficult to do so without inquiring into very sensitive attorney-client discussions of Mr. Sabzevari's trial strategy, ████████████ ██████████████████████████████████. Indeed, under such circumstances, the risk of a potential intrusion into the attorney-client relationship is not justified by the potential benefit of the information to be learned by the Court, especially considering the fact that the Court has had the opportunity to observe our performance as Mr. Sabzevari's counsel and can accordingly assess whether that performance was in any way defective or seemed to inappropriately favor Mr. Haghighat.

Of course, it did not. As the Court has pointed out, as recently as last week, there was not and could not have been any real antagonism in the defenses of Mr. Haghighat and Mr. Sabzevari at trial: both contended that Mr. Haghighat did not provide material non-public information to Mr. Sabzevari. Nor did either contest the nature of their relationship at the time, which relationship was made a part of Mr. Sabzevari's defense. The facts regarding the relationship between Mr. Haghighat and Mr. Sabzevari were also discussed in connection with sentencing, by way of explaining Mr. Sabzevari's trading activities, facts that certainly do not bespeak any kind of bias toward Mr. Haghighat as a result of his payment of fees, but which – as the Court specifically mentioned at sentencing – were also consistent with the communications introduced at trial.

All of that said, the law is clear: RPC 1.8(f) allows precisely the arrangement here and, far from undermining, actually protects, a party's rights, including the Sixth Amendment rights of a defendant in a criminal case. *Kearney*, 479 N.J. Super. At 560 (declining to find conflict despite failure to obtain client's informed consent as required by Rule 1.8(f) because defendant's counsel acted as a "zealous advocate of defendant's interests and exhibited loyalty to his client");[5] *see also, e.g., United States v. Corona*, 108 F.3d 565, 575 (5th Cir. 1997) (holding that defendant's counsel's receipt of payment from co-defendant did not establish a conflict of interest, as "[t]he fact that Corona paid McDonald's counsel does not mean that [McDonald's counsel] represented Corona" and citing Model Rule 1.8(f)). Nor does it require either disclosure to the Court or the approval thereof, in part because, as set forth above, any such disclosures would risk, if not require, the disclosure of attorney-client communications, ██████████████████████████████████ ████████████. It was not required before and should not be now. Of course, if the Court wishes further information, we will provide it if we can, while attempting to

---

[5] Unlike in *Kearny*, here Mr. Sabzevari, following RPC 1.8(f)(1) in fact gave informed consent to the arrangement, which – if necessary – amounts to a waiver of any conflict.

May 5, 2026
Page 5

avoid the specific risks that Rule 1.8(f) is meant to avoid (i.e., the disclosure of confidential information). And if the Court believes, based upon the above and notwithstanding Mr. Sabzevari's expressed wishes – as the Court observed yesterday, we remain the counsel of his choice – that it should appoint other counsel to represent Mr. Sabzevari going forward, we will certainly cooperate with that counsel. Finally, as promised yesterday, we will file his notice of appeal, as a service to him and to the Court, to assure compliance with the tight deadlines for doing so that the Court mentioned at sentencing.

Thank you for your consideration of this matter. Given its sensitivity, we are not filing it on the public docket and would ask that the Court not do so either.

Respectfully submitted,

*s/ Lawrence S. Lustberg*
Lawrence S. Lustberg

cc: Tamara Livshiz, Trial Attorney
    United States Department of Justice

One Gateway Center | Newark, NJ 07102 | 973-596-4500
**FBT Gibbons LLP | fbtgibbons.com**